NOE *v.* LAYTON.

Opinion delivered October 21, 1905.

1. EQUITY—RELIEF AGAINST JUDGMENT AT LAW.—It is not enough to warrant the interference of equity with a judgment at law that an accident has prevented the losing party from pressing a motion for

new trial based upon technical errors occurring at the trial sufficient to warrant a reversal on appeal; it must appear that it would be contrary to equity and good conscience to allow the judgment to be enforced. (Page 588.)

2. LANDLORD'S LIEN—WAIVER.—Where a tenant sold a crop on which his landlord had a lien, and the landlord received payments from the tenant, knowing that they were derived from the sale of such crop, he will be held to have ratified the sale and waived the lien. (Page 588.)

Appeal from Marion Chancery Court.

T. H. HUMPHREYS, Chancellor.

Affirmed.

*J. W. Black,* for appellant.

Equity will relieve against hardship caused by unavoidable accident, fraud or mistake. 61 Ark. 341; 38 Ark. 283. Having demurred to the petition, the facts alleged therein are admitted, and can not be controverted. Bliss, Code Pl. (2 Ed.), sec. 418; 10 Conn. 62; 22 N. Y. 472.

*J. C. Floyd,* and *Wood Bros.,* for appellee.

A court of equity will not interfere unless the judgment complained of gives the successful party such an advantage as it cannot, in good conscience, permit to stand. Beach, Mod. Eq. Jur. § 664; 61 Ark. 341; *Ib.* 356; 51 Ark. 341; 13 Ark. 600. Nor will it interfere unless the petition shows that substantial injustice, or failure of justice, has occurred. 48 Ark. 535; 40 Ark. 551; 50 Ark. 458, and cases cited above.

BATTLE, J. This case was before this court in October, 1901, on appeal by T. S. Noe. A. S. Layton was appellee. The judgment appealed from was reversed, and the cause was remanded for a new trial, as will more fully appear in 64 Ark. 880. Since then A. S. Layton has died, and the action has been revived in the name of W. E. Layton, as administrator of the estate of A. S. Layton, deceased. The action was brought by A. S. Layton against Noe to recover possession of a bale of cotton. A new trial was had in the Marion Circuit Court on substantially the same testimony as in the former trial, and a verdict and judgment were rendered for plaintiff, Layton. Appellant filed his motion for a new trial, which was overruled, and asked for an appeal to Supreme Court, which was granted, and appellant was given twenty days in which to file his bill of exceptions, and by

agreement of appellant's counsel and the Hon. E. G. Mitchell, the circuit judge of the 14th judicial circuit of Arkansas, before whom said cause was tried, the bill of exceptions was to be signed at the Marshall Circuit Court, the week following the Marion Circuit Court, which would be within the twenty days' time given appellant in which to file his bill of exceptions. When counsel for appellant appeared at the Marshall Circuit Court with his bill of exceptions duly prepared, the circuit judge, the Hon. E. G. Mitchell, had vacated the bench, and gone to Western Oklahoma, a distance of eight hundred or a thousand miles, thereby rendering it impossible for appellant to secure the signature of the circuit judge to his bill of exceptions, and have same filed in the circuit clerk's office within the twenty days allowed, thereby cutting him off from his right of appeal, unless this court holds that the chancery court has the right to grant relief in such cases by allowing a new trial.

Noe on the 16th day of October, 1903, filed in the Marion Chancery Court a petition for a new trial, and stated in substance as follows:

"That at the August term, 1903, of the Marion Circuit Court, the case of W. E. Layton, administrator aforesaid, *v.* T. S. Noe, was tried. The trial was before a jury, and the verdict and judgment were for W. E. Layton, administrator. That at the same term of the circuit court, and within three days after the rendition of the judgment, T. S. Noe filed a motion for a new trial, which was overruled, exceptions were saved, and an appeal was prayed and granted. That twenty days were given T. S. Noe in which to prepare and file his bill of exceptions. That appellant's attorneys represented two other parties whose cases were decided at the same August term of the court, in which they appealed, and were given twenty days to prepare and file bill of exceptions, and they as diligently as they could got up bills of exceptions. It was further understood and agreed by the parties and the Hon. E. G. Mitchell, judge of the circuit court, that bills of exceptions should be prepared and presented to the judge at the Searcy court at its next term, to be held the next week, beginning Monday, the 7th day of September, 1903, and that on Wednesday, September 9, 1903, the appellant, through one of his attorneys, attended the Searcy Circuit Court with the

bills of exceptions prepared to present to the judge for his signature. This was five days before the expiration of the twenty days given for filing bill of exceptions. That Judge E. G. Mitchell had, on Tuesday, after opening court in Searcy County, vacated the bench and caused the election of a special judge, the Hon. J. C. Floyd, who had been of Layton's counsel in the Marion Circuit Court, and that the regular judge, the Hon. E. G. Mitchell, before the arrival of the appellant's attorney, departed this State, and remained out of it until after the expiration of the twenty days given for filing the bill of exceptions in the Marion Circuit Court.

"Appellant was informed and believed that the circuit judge had gone to Beaver City, Okla. Ter., a point so remote from this State that it would have been impossible to have reached him, obtained his signature, and returned to this State in time to file the bill of exceptions within the twenty days, which expired on September 14, 1903. Appellant states that, by reason of the foregoing facts, he was prevented from filing his bill of exceptions, and his right of appeal was cut off, thereby causing plaintiff a great and irreparable wrong.

"Plaintiff further states that the facts, as shown by the evidence on the trial of the cause in the circuit court, were as follows, towit: In 1899, Alex and Andy Davis, brothers, raised crops on the lands belonging to and in the possession of T. S. Noe, the complainant here, and under an agreement with them Noe furnished the lands, farm implements, work animals and feed for same, and supplies to the Davises for raising a crop during the year 1899. That Noe was to give the Davises for raising crop one-half thereof, after deducting therefrom the value of supplies furnished the Davises by him. Noe furnished them at the store of J. S. Cowdrey, in Yellville, Ark., with supplies to the following amounts,—to Andy Davis, $25.77; to Alex Davis, $21.58. The amount of cotton raised under said agreement going to Alex Davis, and subject to lien for supplies, was 500 pounds in the seed, and the amount going to Andy Davis under the agreement was 900 pounds in the seed, subject to the lien for supplies. T. S. Noe had the part of Alex Davis brought and placed in his crib, and afterwards he and Andy Davis hauled both parcels to the gin and placed it there for ginning. In order

to keep his accounts with the Davises correctly, the cotton was placed in the gin in the name of Alex and Andy Davis. Noe gave direction to the ginner, in the presence of Andy Davis, as the aggregate amount of cotton was too small to make two bales, to place it all in one bale, and then told Andy Davis that he (Noe) would go to town and learn whether the best prices were paid for cotton in the seed or in the bale, and allow the Davises the best price therefor. After the cotton was baled, ginned and numbered, Alex Davis (without the knowledge or consent of Noe) went to the ginner, and got the number of the bale and its weight on a piece of paper signed by the ginner, and, with this only to support his statement that he and his brother owned a bale of cotton, sold the same to I. J. Baker, the agent of A. S. Layton (the defendant's intestate) for $29.64. Afterwards, when Noe learned of the sale of the cotton, he went to Baker and Layton, and told them that he had a landlord's lien on the same, and then took the cotton from the gin, and hauled it to McBee's Landing on White River, a distance of some eight or ten miles from Hurt's gin, where the cotton was ginned. This gin was situated two or three miles from Yellville, where Layton lived, and did business, and the cotton was never in Layton's possession. After Noe hauled the cotton off, Layton brought suit in replevin, and took possession of the cotton. Before Noe hauled the cotton away, towit: on November 12th and November 20th, Andy Davis paid $12 on his supply account on the first date, and $5 on the latter date. Andy Davis testified that this was from money received from the sale of the cotton. The evidence is conflicting whether Noe knew that these payments were from the Layton money, before he hauled the cotton off. Alex Davis never paid a cent on his supply account, and had abandoned all claim to the cotton in behalf of Noe before the cotton was placed in the gin.

"The bill of exceptions prepared to be presented to the Hon. E. G. Mitchell, the judge of the Marion Circuit Court, by complainant's attorneys, is filed herewith, made a part hereof, and marked exhibit 'A.'  *  *  *

"And that the Hon. Circuit Judge, E. G. Mitchell, committed errors during the trial prejudicial to this appellant, to which appellant excepted at the time, and that the verdict of the jury was without evidence to support it, and the judgment unjust

and inequitable. That appellee, through the replevin suit, procured possession of the bale of cotton in question, valued at $30.29, and converted it to his own use.

"Wherefore plaintiff prays that this cause be heard, and that the defendant be compelled to submit to a new .trial at law, or that he be ordered to return to the plaintiff the $30.29, the value of the cotton, with interest, and pay all costs and for all other equitable relief."

The instructions given by the court to the jury and copied in the writing attached to the petition, called bill of exceptions, and made exhibit, so far as is necessary to copy in this opinion, are as follows:

"No. 1. This is a cause in which A. S. Layton is the plaintiff, said A. S. Layton being dead; and the suit, revived in the name of W. E. Layton, seeks by replevin to recover a bale of cotton of the value of $30.29 from the defendant, T. S. Noe. Before the plaintiff can recover, the burden is on him by a preponderance of the evidence to show that he is the owner and entitled to the possession of the cotton. Plaintiff claims that he bought the cotton from the Davis Brothers. It is admitted that the Davis Brothers were tenants or employees of the defendant, Noe, and admitted that the Davis Brothers got supplies from the defendant for which he is entitled to a lien. I instruct you that this lien on the cotton raised by the Davis Brothers continued to the cotton gin, where it was hauled and ginned, and he, the defendant, had the right of possession to it at the gin, notwithstanding the fact that the Davis Brothers had taken the ginner's receipt and sold it to Layton, unless Layton showed by a preponderance of the evidence that when he bought the cotton from the Davis Brothers, Noe, the defendant, consented to the sale at the time the same was made, or that he afterwards, and before the bringing of this suit, waived his lien and released same."

"No. 2. I instruct you that if you find from the preponderance of the evidence that the defendant Noe was in possession of the cotton in controversy, and while in such possession he knew that Davis Brothers had sold the same to Layton, and that Layton had bought in good faith, believing that Davis Brothers had the right to sell, and afterwards that defendant accepted part of the money paid by Layton to Davis Brothers, he thereby

ratified the sale, and you will find for the plaintiff, although you may believe that at the time the sale was made Davis Brothers had no right to sell the cotton."

The defendant, Layton, filed a demurrer to the petition, and the court sustained· it, and dismissed the petition for want of equity, and the plaintiff, Noe, appealed.

In *Whitehill* v. *Butler,* 51 Ark. 341, it is said: "It is not enough to warrant the extraordinary interference of equity with a judgment at law that an accident has prevented the losing party from pressing a motion for a new trial based upon technical errors occurring at the trial, even though they might be sufficient to warrant a reversal on appeal. *Johnson* v. *Branch,* 48 Ark. 535. A party who has obtained judgment after a full investigation of the controversy by a competent tribunal will not be forced by a court of equity to submit to a new trial, unless justice imperatively demands it. It must clearly appear to that court that it would be contrary to equity and good conscience to allow the judgment to be enforced, else it declines to impose terms upon the prevailing party."

In the case before us the appellant, Noe, had a lien on the cotton in controversy for supplies furnished the Davis Brothers. Alex Davis, one of the owners of it, sold it to A. S. Layton, without the knowledge or consent of Noe. Andy Davis paid to Noe out of the proceeds of the sale on November 12th and 20th, 1899, $17, on the amount he and his brother were owing for supplies. Appellant, in his petition, alleges that "the evidence is conflicting as to whether Noe knew that these payments were from the Layton money before he hauled the cotton off." He fails to show in any way what this evidence was. He shows that he testified that he did not know, but does not show the evidence which conflicted with his on that point. In "Exhibit A" to his petition it appears that the court instructed the jury that, if they found from the preponderance of the evidence that Noe accepted part of the money paid by Layton to Davis Brothers or either of them, and knew that it was the money paid by Layton to the Davis Brothers for the cotton, they would find for Layton. The jury returned a verdict in favor of Layton, and thereby found that Noe knew that the money received by him was a part of the proceeds of the sale of the cotton. Construing the petition

and the exhibits, which were made a part thereof, together, it is evident that the jury found from the evidence that Noe knew, at the time he received the money, that it was a part of the proceeds of the sale of the cotton to Layton.   Unless they did, they could not, under the instructions of the court, have returned the verdict.   If this finding be true, Noe thereby ratified the sale to Layton, and he is not, in law or equity, entitled to the possession of the cotton.

The verdict being sustained by evidence, the judgment he attempts to appeal from is not reversible; and there is no equity in his petition for a new trial.

Decree affirmed.