FERNWOOD MINING COMPANY v. PLUNA.

Opinion delivered March 10, 1919.

1. NEW TRIAL—BILL IN EQUITY.—In order that a bill in equity may lie to obtain a new trial of an action at law, it must appear, not only that inevitable accident has prevented the losing party from prosecuting an appeal based on assignments of error, but also that it would be contrary to equity and good conscience to allow the judgment to be enforced.

2. NEW TRIAL—RELIEF IN EQUITY.—Where the losing party in an action at law had a remedy at law by appeal or motion for new trial, and lost it without fault on his part, by causes beyond his control, preventing him from prosecuting his appeal in due time, equity will grant relief.

3. NEW TRIAL—UNAVOIDABLE CASUALTY—EQUITABLE RELIEF.—Where defendants in an action at law were prevented from presenting their bill of exceptions to the presiding judge, because he had left the State, a bill in equity will not lie on the ground of unavoidable casualty; it appearing that plaintiffs in bill might have obtained an adjournment of court from a special judge for the purpose of having the bill signed, or might have procured from opposing counsel an agreement that the bill of exceptions was correct.

Appeal from Johnson Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

*Paul McKennon* and *James B. McDonough,* for appellant.

1. This court has often upheld the power and right of a chancery court to enjoin a judgment at law unless the successful party would submit to a new trial. 61 Ark.

354; 38 *Id.* 283; 40 *Id.* 338; 35 *Id.* 123; 73 *Id.* 555; 75 *Id.* 507; 96 *Id.* 520; 114 *Id.* 261; 120 *Id.* 151.

Keeping in mind the principles laid down in the above cases, the appellant is (1) without fault and (2) the judgment is unjust and inequitable and appellant was entitled to relief. Judge Priddy had left the State and remained away during the entire term of the court and thereby appellant had lost the right of review. A judge who is absent from the State is legally dead and no one should be prejudiced by an act of the court. 128 Ark. 269. The judge could not sign the bill of exceptions in time. 143 Pac. 329; 22 Cyc. 365; 129 Pac. 693; 35 Okla. 362; 26 Kan. 780; 12 Ga. 612; 131 Ind. 437; 31 N. E. 88; 45 Kan. 541; 128 Pac. 111; 83 Atl. 337; 85 Ark. 385; 59 *Id.* 162.

2. The allegations of the complaint show a complete absence of any negligence on the part of appellant or attorneys. They had the right to presume that Judge Priddy would be present and hold court. He had not notified them that he would not and awaited his coming. The unexpected absence of the judge was an unavoidable casualty. 26 Okla. 605; 26 *Id.* 613; 25 *Id.* 319. See also 86 S. E. 623; 147 N. W. 880; 169 S. W. 828; 140 Pac. 690; 126 *Id.* 5. The judgment should have been set aside. 128 Ark. 169; 61 Pac. 1119; 48 *Id.* 324. Unavoidable accident or casualty is good ground for relief. 39 Okla. 466; 26 *Id.* 613; 110 Pac. 1071; 128 N. W. 349; 119 Pac. 681; 118 S. W. 747; 100 N. Y. S. 747; 80 N. W. 1079; 57 Atl. 104; 35 Ark. 123. See also 172 Pac. 84; 166 *Id.* 78; 78 Atl. 928; 71 N. W. 989; *Ib.* 990; 6 N. W. 762; 49 *Id.* 353; 99 N. W. 843; 58 Atl. 793; 10 L. R. A. 796; 95 Me. 244; 44 S. W. 194.

Appellants were forced to trial before a jury that had formed an opinion on the merits. The Pluna trial followed immediately after the trial of the Kukar case against the same defendants and that case had its prejudicial effect upon the jury. Some at least had heard the evidence and argument in that case. 61 Ark. 354; 60 *Id.* 221; 21 *Id.* 336; 24 Cyc. 279.

3. It was harmful error to admit in testimony the evidence of Pluna as to his having no property and as to having a wife and children dependent upon him. 3 Elliott on Ev., § 1990, and note 119; 74 Ark. 326; 102 U. S. 451; 73 Wis. 158; 81 Fed. 807; 45 Fla. 403; 101 Ill. App. 155; 64 Kan. 421; 86 Mo. App. 193; 55 Ohio 392; 17 Tex. Civ. App. 70; 41 S. E. 216.

4. The articles of incorporation were inadmissible. Cook on Corp., § § 663-4. One corporation cannot be the dummy of another. 69 Ark. 85; 94 *Id.* 471; 107 *Id.* 126; 169 Fed. 255; 61 S. W. 165; 69 Ark. 85, 88. See also 68 Fed. 105; 71 Ark. 290; 70 *Id.* 10; 109 Ga. 827; 126 Fed. 278; 116 *Id.* 157; 45 *Id.* 812; 109 La. 1050; 34 So. 74; 45 S. W. 207.

5. As matter of law the Fernwood Mining Company was an independent contractor under the lease.

6. The relation of master and servant does not exist between Pluna and the Arkansas Anthracite Coal & Land Company. Cases under par. 5.

7. The evidence was insufficient to support the verdict. Appellee's own evidence shows this.

8. There is error in the instructions given and refused. 128 Ark. 479,

*Evans & Evans,* for appellee.

1. This is an attempt to enjoin a judgment of the circuit court after that judgment had been merged in the judgment of the Supreme Court on appeal and the rules applicable to a case where it is sought to enjoin a judgment of the circuit court do not apply but the rules applicable to suit to enjoin a judgment of the Supreme Court prevail. 33 Ark. 161. Such a judgment cannot be reviewed, altered or modified by an inferior court for matters upon the record but only for matters arising after judgment of the appellate court rendering it inequitable to carry it into execution. 60 Ark. 50; 63 *Id.* 141; 61 *Id.* 354; 73 *Id.* 556; 75 *Id.* 509; 96 *Id.* 522; 120 *Id.* 151; 48 *Id.* 355. It must clearly appear that it would be contrary to equity to allow the judgment to be enforced and

that the party complaining must be free from fault and the judgment unjust and inequitable and he has lost his right of appeal or review by unavoidable accident. Mere errors in the trial are not sufficient to warrant the interposition of a court of equity. Here the parties were not free from fault, nor did they lose their right of appeal or review by unavoidable accident. 118 Ark. 355. An agreed bill of exceptions could have been gotten up and signed by counsel of record under Acts 1911, p. 192. Under this act it was not necessary for Judge Priddy to sign the bill of exceptions. The complaining party must be free from fault and have lost his right of appeal by unavoidable casualty or accident. Cases *supra.* As to the admission of testimony that Pluna had a wife and children dependent upon him and the amount of damages, see 99 Ark. 265; 100 *Id.* 107, 535; 104 *Id.* 415; 74 *Id.* 326.

2. The articles of incorporation were properly admitted in evidence. Cook on Corp., §§ 663-4-7; 142 U. S. 417; 142 Fed. 247. Under the law as we have presented it and the evidence, the Fernwood Company was not an independent contractor and the relation of master and servant did exist between Pluna and the Arkansas Anthracite Coal & Land Company. The testimony shows this. The evidence also sustains the verdict and it is not excessive nor was there any error in the instructions. The judgment was right and the court properly refused to enjoin it for the many reasons stated above.

STATEMENT OF FACTS.

This was a bill in equity for a new trial upon the ground that the defendants had been prevented by unavoidable casualty from obtaining the signature of the presiding judge to their bill of exceptions within the time prescribed by law and that they thereby lost the right to have their assignments of error reviewed in the Supreme Court in the case of *Fernwood Mining Co. et al.* v. *Pluna,* 136 Ark. 107, 205 S. W. 822.

The court sustained a demurrer to the complaint of the plaintiffs and the plaintiffs electing to stand upon their complaint, the court dismissed the same for want

of equity and dissolved the temporary injunction which had been granted in the case. The complaint is as follows:

"Come the plaintiffs, Fernwood Mining Company and Arkansas Anthracite Coal & Land Company, and for their cause of action say that at the December, 1917, term of the Johnson Circuit Court the suit of *Alex Pluna* v. *Fernwood Mining Company* and *Arkansas Anthracite Coal & Land Company* was tried, and a judgment for damages in favor of the plaintiff was rendered in the sum of twenty-five thousand dollars ($25,000), and a motion for new trial was prepared, presented to the court by the defendants, and by the court overruled, from which ruling of the court the defendants prayed an appeal to the Supreme Court of Arkansas.

"Plaintiffs state that in the trial of said cause in the Johnson Circuit Court, various errors in the instructions given by the court and in the testimony of plaintiff were made, and were set forth at length in the exceptions of the defendants that were duly prepared in the motion for new trial and the bill of exceptions, which said bill of exceptions is hereto attached and made a part hereof. Plaintiffs state that the verdict was rendered in this case on the 27th day of February, 1918, at 10 o'clock at night; that the court had indicated a purpose to adjourn at once, which necessitated the filing of the motion on the part of defendants for time in which to prepare a motion for new trial. This motion was filed on the morning of the 28th of February, was granted and time given until March 18, in which to file said motion for new trial. The court then adjourned over to that day. On March 18 the motion for new trial was filed and presented to the court and overruled. Ninety days were given in which to prepare and file a bill of exceptions. According to this order, the defendants had until June 17 in which to file bill of exceptions.

"Counsel for the defendants urged the court stenographer while in the court room to rush the completion of the record in this case. He was also urged by letters

from counsel to complete the work at once. This evidence arrived at Clarksville on the night of April 20, by express, with collect charges amounting to $88.77, which was paid by defendants, and the package was delivered on April 21, 1918. One of the defendants' counsel resides at Fort Smith, and the other at Clarksville, and they had prepared all that part of the bill of exceptions which could have been prepared without the stenographer's notes, and on April 24 they met at Fort Smith and completed the bill of exceptions, which was completed by the stenographer in counsel's office, and brought back to Clarksville.

"Attorneys for these plaintiffs approached attorneys within four days after April 24, Reynolds, Ragon and Patterson, who represented the suitor, Pluna, in the trial of this suit, to secure their approval of the bill of exceptions, all of whom stated that the approval must be made by Judge J. H. Evans of Booneville, Arkansas, who was leading counsel for the plaintiff. In these conversations with said Ragon, Patterson and Reynolds, plaintiffs' attorneys had no knowledge that Judge Priddy would soon leave the State, and neither Patterson, Ragon nor Reynolds mentioned in said conversations the fact that Judge Priddy, who tried this case, would leave the State before the May term of the Johnson Circuit Court opened, and the plaintiffs now alleged that the said Judge Priddy did leave the State on May 2, 1918, and before said Johnson Circuit Court opened. These plaintiffs now charge upon information and belief that the said Ragon, one of the attorneys for Pluna, by reason of his being prosecuting attorney of the court, at the time of the above conversation, had knowledge that Judge Priddy would leave the State soon and would not hold said May term of court, but said Ragon did not communicate that knowledge to either of these plaintiffs' attorneys. The May term of the Johnson Circuit Court began on the first Monday in May, which was May 6. Attorney Charles Evans, son and law partner of J. H. Evans, was in the town of Clarksville some days before the opening of said May

term of court, and attorneys for these plaintiffs approached him, and spoke to him about the approval of the bill of exceptions, stating to him that it was completed, with the exceptions of binding together, and inquired about the whereabouts of J. H. Evans, and if he would be present in Clarksville during the May term of court, which convened the following Monday. Charles Evans stated that his father was expected to be in several different places, naming McAlester, Oklahoma City, and possibly other points, but that he would call at his home, and ascertain over the telephone and would inform attorneys of his father's movings. On Sunday, May 5, at noon, attorneys for these plaintiffs were informed for the first time that Judge A. B. Priddy, who had tried the case, had left the State to attend a Methodist General Conference at Atlanta, Georgia, and would not be present during the term of court. Attorneys for these plaintiffs made frequent calls on the telephone to Judge Priddy's office and home in Danville, in an effort to ascertain some definite information as to when he expected to return, but could not learn anything in regard to it. On the morning of May 9, Judge Evans appeared in the court room in Clarksville, and attorneys for these plaintiffs spoke to him regarding the bill of exceptions in this case. Paul McKennon, one of the attorneys in this case, stated to Judge Evans that he, McKennon, had the bill of exceptions in the Pluna case in his office. Judge Evans stated that he did not have time to inspect it then, and mentioned the absence on this date of Judge Priddy. Judge Evans stated that he had come in on an early morning train, with his wife, because of the sickness of his son, who was at a local hotel, and that he was leaving at noon for home with him. He stated that if the bill of exceptions was sent to him at Booneville he would inspect the same and return at once. At the time attorneys for the plaintiffs had no knowledge that Judge Basham would adjourn court during that week and did not know at that time and before he did adjourn it that he would adjourn the May term of the court before Judge Priddy's return

to the State of Arkansas. On the evening of said May 9
the said Paul McKennon made application to said Judge
Basham and was excused from further attendance upon
the court for that week and these plaintiffs and their at-
torneys had no knowledge or reason to suppose prior to
the adjournment of said court by Judge Basham that said
court would be adjourned before the return of Judge
Priddy to the State. Attorneys for these plaintiffs in
this case made frequent calls at Booneville during the
entire week. On the morning of May 13 defendant's at-
torneys conferred at Fort Smith about the absence of
Judge Priddy from the State, and during this conference
made some additions to the bill of exceptions which were
dictated to the stenographer and sent to Clarksville by
express on the night of the 14th, and delivered to counsel
on the 15th.

"In the meantime, counsel for these plaintiffs had
wired Judge Priddy at Atlanta, inquiring about his re-
turn to the State of Arkansas, and informing him that
there were important papers to sign. The bill of excep-
tions was sent to Judge Evans at Booneville on the 15th
of May, and was returned to counsel with his refusal to
approve it, dated May 18, and was received by counsel on
May 22. Counsel for these plaintiffs in the meantime
had reached Judge Priddy at his home on May 18, which
was the first time communication had been established
with him. Judge Priddy stated that he had been back
from Atlanta a day or so, but had been at Magazine with
his sick mother. He returned to Arkansas on the 16th
of May. The bill of exceptions had been received from
Judge Evans on May 22, and was taken to Fort Smith,
where attorneys for these plaintiffs, after a conference,
sent the bill of exceptions to Judge Priddy from Fort
Smith by express, at noon on May 24. It should have
reached him that night. Not hearing from him, attor-
neys for these plaintiffs called him over the telephone
on May 27 and made inquiries. Judge Priddy stated
that he had just found the package in the law office of his
former law partner, and had signed and shipped it to

Clarksville that day. It should have reached Clarksville the following day, and not arriving, the express agent at Clarksville wired a tracer for it, and it arrived on May 31, and was filed on that day. Judge Priddy's signature to the bill of exceptions was made after the May term of court at Clarksville had adjourned, but the said bill of exceptions was prepared and ready for his signature before said term of court opened, it being the intention of counsel to submit the same to him, and to discuss any changes that might be suggested by opposing counsel during that term of court, and if Judge Priddy had been present to hold the term of court, or if he had been within bounds of the State during said term of court, the bill of exceptions would have been presented to him for his signature, and signed and filed before the adjournment of that term of court. Between April 25, the day on which the Pluna bill of exceptions was completed, and May 2, the day on which Judge Priddy left the State of Arkansas, plaintiffs' counsel believing that counsel for defendant Pluna and Judge Priddy both would be present and relying upon a practice frequently followed, to settle, sign and file bills of exceptions at the beginning of a term of court, when both parties would be present, and counsel for these plaintiffs not knowing that Judge Priddy would leave the State before the opening of said May term of court, and Judge Evans not being in Clarksville between April 25 and the opening of said court, did not present said bill of exceptions to the said Evans and Judge Priddy between said dates, relying upon the belief that said Evans and Judge Priddy would be present at said term of court, at which time said bill of exceptions would be signed and filed. As Judge Priddy did not return to the State before the May term of the court was adjourned, and as he was without power or authority to sign a bill of exceptions outside of the State, it was therefore impossible under the facts above stated to have this bill of exceptions signed and filed before the adjournment of the May term of the court, Judge Priddy not being in the State, and not having held a May term of court at

all. Plaintiff's counsel was not in the court room when Judge Basham entered an adjourning order of the May term of the court and did not know that Judge Basham would make an order adjourning that term of the court at that time.

''Plaintiffs state further that, due to the short period of time between the overruling of the motion for new trial and the opening day of the May term of court, attorneys for these plaintiffs had made unusual and extraordinary efforts to complete the bill of exceptions without delay; that the record in the case is very voluminous, containing 260 typewritten pages, and they were absolutely without knowledge of the intention of Judge Priddy to leave the State, and that this knowledge was first conveyed to them at noon on Sunday, May 5, before the opening of the court, the following morning, by Attorney H. H. Ragon, who represented Pluna in his suit, and that Attorneys Patterson, Ragon and Reynolds had each declined to inspect the bill of exceptions and to approve it. Plaintiffs state that by reason of the fact that the bill of exceptions was not filed until after the closing of the May term of court, they have been deprived of their right of appeal, and of having the case reviewed upon the exceptions made by them in the trial of the case, which said failure works a great injustice upon the plaintiffs in this court, and was due to no fault or negligence on their part.

''Plaintiffs further allege that by reason of the facts above set forth, and by reason of the absence of Judge Priddy from the State of Arkansas, during the May term of said Johnson Circuit Court, and by reason of the fact that the Supreme Court on motion of defendant in this case, struck from the transcript of the record in the Supreme Court the bill of exceptions in this case, the plaintiffs in this case are without fault or negligence on their part, being deprived of the right to a fair trial in this case.

''Plaintiffs herein allege that in the trial of said case in the circuit court, numerous harmful errors occurred,

depriving the defendants of their rights, and their property, without due process of law, and these errors are specifically set forth in the motion for a new trial filed in said cause in the circuit court, which motion for a new trial, setting up all said errors, is in words and figures as follows:" (Here followed the motion for a new trial in the law case.)

"The plaintiffs further allege that by reason of the absence of Judge Priddy from the State of Arkansas, and their inability to have the bill of exceptions signed before the adjournment of the May term of the Johnson Circuit Court, they have lost their right of review of said errors in a court of law. The said errors set forth in the above and foregoing motion for a new trial are manifest, and when said motion for new trial is considered in connection with the bill of exceptions, said errors are clearly shown. As before stated, the said bill of exceptions is hereto attached and made a part hereof, to the end that this court may see that harmful errors were committed against the rights of these plaintiffs in this action.

"By reason of the facts set forth, plaintiffs herein have lost their right to have said judgment reviewed in the court of last resort of the State, and plaintiffs therefore have no remedy at law, and are without remedy except in a court of equity.

"Plaintiffs further allege that they are advised that the defendant in this cause, being the plaintiff in the suit in the circuit court, will, unless restrained, proceed to a collection by execution and otherwise, of said judgment rendered in the circuit court. The Supreme Court of the State, on motion of the defendant in this case, as above set forth, struck out the bill of exceptions and affirmed the judgment in this cause of the circuit court. The defendant in this cause will, therefore, unless restrained, proceed to the immediate collection of that judgment to the great injury and harm of the plaintiffs in this action. The plaintiffs herein allege that the defendant in this action being plaintiff in the other action, is insolvent and

therefore the plaintiffs in this action will suffer irreparable injury and loss, unless a temporary restraining order is issued against said defendant in this action, restraining him, his agents and attorneys, from the immediate collection of said judgment at law.

"The Arkansas Anthracite Coal & Land Company further and specifically allege that the plaintiff in the lower court, Alex Pluna, being the defendant in this court, was not in the employ of the Arkansas Anthracite Coal & Land Company. The relation of master and servant did not exist between the defendant Alex Pluna and the Arkansas Anthracite Coal & Land Company. The Fernwood Mining Company was operating the mine and Alex Pluna was in the employ of the Fernwood Mining Company, but there was no contractual or other relation between the Arkansas Anthracite Coal & Land Company and Alex Pluna. The Arkansas Anthracite Coal & Land Company, therefore, specifically alleges that this judgment against said Arkansas Anthracite Coal & Land Company is a judgment based upon the existence of the relation of master and servant, between Alex Pluna and the Arkansas Anthracite Coal & Land Company, whereas in truth and in fact no such relation existed, and said Pluna was not at the time of his accident in the employ of the Arkansas Anthracite Coal & Land Company as the latter company was not operating said coal mine and had nothing whatever to do with the employment of Alex Pluna, and said Alex Pluna was not working for the Arkansas Anthracite Coal & Land Company, and was not employed by it at the time of his injury. The said Arkansas Anthracite Coal & Land Company, therefore, alleges that to permit the defendant Alex Pluna to recover in a judgment against the Arkansas Anthracite Coal & Land Company in the sum of $25,000 based upon the existence of the relation of master and servant, whereas in truth the relation of master and servant did not exist, would be to deprive the Arkansas Anthracite Coal & Land Company of its property without due process of law, contrary to and to deprive it of the equal protection of the

law, in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States.

"Premises considered, the plaintiffs herein pray that this court issue a temporary restraining order, restraining the defendant in this action, his agents and attorneys, from the issuance of any execution or other process on said judgment at law, until the further order of this court, and that at the final hearing hereof said temporary restraining order be made permanent.

"The plaintiffs further pray that at the final hearing of this cause the said judgment erroneously rendered in the circuit court be set aside and held for naught, and that a new trial by reason of the errors set forth in the motion for new trial be granted, and that these plaintiffs have all other and further relief to which they may be entitled in equity."

The case is here on appeal.

HART, J., (after stating the facts). The complaint in this case proceeds upon the theory that the plaintiffs herein had a meritorious defense to the suit in the law court against them and they asked for a new trial upon the ground of unavoidable accident. After a careful examination of the petition, which is set forth in full in the statement of facts, we are of the opinion that it fails to state facts sufficient to entitle the plaintiffs to a new trial in the law case. It is not enough that an inevitable accident has prevented the losing party from prosecuting an appeal based upon assignments of error occurring at the trial in the law case, but it must also clearly appear to the court that it would be contrary to equity and good conscience to allow the judgment to be enforced; else a court of equity declines to impose terms upon the prevailing party. *Johnson* v. *Branch,* 48 Ark. 538, and *Whitehill* v. *Butler,* 51 Ark. 341.

The complaint sets out the motion for a new trial and the bill of exceptions in the law case in order to show that the defendants therein had a meritorious defense to the action. We have not set these out for the

reason that if it be assumed that this is so we do not think that the defendants in the law case were prevented from obtaining a new trial or prosecuting their appeal by reason of inevitable accident or unavoidable casualty. In *Vallentine* v. *Holland et al.*, 40 Ark. 338, the court said:

"Courts of chancery will direct a new trial after a judgment at law, when the complainant can show, first, that his adversary had obtained an advantage that can not be conscientiously retained, as that a successful plaintiff had no cause of action, or an unsuccesful defendant had a meritorious defense; second, that his own conduct has been free from fault and unmixed with negligence; third, that, owing to some fraud, accident or mistake, not imputable to him or his attorney, he was not present at the trial, nor able to make his defense there; or if there, that he was prevented from moving for a new trial because the judges dispersed or the term lapsed before it could be made or disposed of; or that, on account of the existence of some other peculiar circumstance, he is without remedy at law. The subject is learnedly discussed in a note to 19 American Decisions, 609." See also *Jackson* v. *Woodruff*, 57 Ark. 599, and *Noe* v. *Layton*, 76 Ark. 582. Many other decisions of this court might be cited to the same effect, but the rule is so firmly established as to render a further citation of authorities unnecessary. The only difficulty is in the application of the principles to a given state of facts. The effect of our decisions is that where the losing party had a remedy at law by appeal or motion for a new trial and has lost it, without fault on his part, by causes which he could not control preventing him from prosecuting his appeal in due time, equity will grant him relief. It has been said that "unavoidable casualty" signifies events or accidents which human prudence, foresight and sagacity can not prevent."

It will be observed that "casualty or misfortune" that authorizes the granting of a new trial must be "unavoidable." The mere ordinary "casualty or misfor-

tune'' is not sufficient. There must be some supervening and uncontrollable accident or casualty: Tested by this rule, the question is, were the plaintiffs by ''unavoidable casualty or misfortune'' prevented from prosecuting their appeal from the damage suit brought against them by Alex Pluna? The trial of the damage suit of *Alex Pluna* v. *Fernwood Mining Company* and *Arkansas Anthracite Coal & Land Company* for damages on account of a serious injury resulting from the alleged negligence of the defendants was concluded and a verdict reached on the 27th day of February, 1918, at 10 o'clock at night. The court indicated that it would adjourn at once, and on that account the defendants asked leave and were given until March 18, 1918, in which to file their motion for a new trial. The court adjourned to that day. On March 18, the motion for a new trial was filed and presented to the court and overruled. Ninety days were given the defendants in which to prepare and file a bill of exceptions. Pursuant to this order, the defendants would have had until June 17, 1918, in which to file a bill of exceptions had not a term of circuit court in which the case was tried commenced and ended before that time. The attorneys for the plaintiffs secured the stenographer's transcript of the evidence on April 21, 1918. One of the defendant's attorneys lived at Fort Smith and the other at Clarksville, Arkansas, where the trial was had. These attorneys met in Fort Smith on April 24th inst., and within four days thereafter they presented the bill of exceptions to local counsel of the plaintiffs at Clarksville. They stated to the attorneys for the defendants that Judge J. H. Evans of Booneville, Arkansas, was the leading counsel for the plaintiffs and that the bill of exceptions would have to be submitted to him for approval. Judge A. B. Priddy, the presiding judge at the trial in the law case and the regular judge, lived at Danville, Arkansas. The regular May term of the Johnson Circuit Court began on the first Monday in May, which was May 6, 1918. The attorneys for the defendants thought Judge Priddy would preside at this term of the court

and intended to secure his signature to the bill of exceptions during the term. Judge Priddy, however, left the State on May 2, 1918, to attend the General Conference of the Methodist Church, South, at Atlanta, Georgia. The May term of the circuit court of Johnson County was held by a special judge elected for that purpose. Court adjourned for the term without any request having been made to him to adjourn to a day certain in order that the bill of exceptions might be submitted to Judge Priddy for his signature and approval. The May term of court was adjourned on May 11, 1918, and the bill of exceptions was presented to Judge Priddy after his return to the State and within the ninety days given by him within which to prepare and file it. Upon appeal, this court held that a bill of exceptions filed after the adjournment of the suceeding term of court in which the case was tried was filed too late to become a part of the record. *Fernwood Mining Co. et al.* v. *Pluna,* 136 Ark. 107, 205 S. W. 822.

The complaint also alleges that counsel for the defendants presented the bill of exceptions to Judge Evans as soon as he appeared at the May term of the court. Judge Evans told them that he had only come there for the purpose of visiting and taking home, if possible, his son, who was sick, and that if they would send the bill of exceptions to him at Booneville he would promptly examine it.

It will be observed that no request was made to the presiding judge to adjourn court to a given day so that the bill of exceptions in the meantime might be presented to Judge Priddy for his approval and signature on his return. Neither did the attorneys for the defendant ask the attorneys for the plaintiffs to agree in writing upon the correctness of the bill of exceptions by endorsements thereon signed by counsel for the respective parties, to the end that agreed bill of exceptions might become a part of the record in the case as effectively as though approved and signed by the judge trying the case. See Act of April 28, 1911, page 192.

. Counsel for the defendants earnestly insist that they had a right to rely upon Judge Priddy attending and presiding at the May term of the Johnson Circuit Court. This may be true, but it only shows that they were not guilty of culpable negligence but falls short of showing unavoidable casualty within the legal definition of these words. Defendants do not allege in their complaint that Judge Priddy promised them that he would sign their bill of exceptions at the May term of the circuit court. If he had done so and had left the State and remained away for such a length of time that they could not have procured his signature to the bill of exceptions this might have been unavoidable casualty or misfortune within the meaning of the legal definition of the words. Then, too, when the attorneys for the defendants in the law case found out that Judge Priddy would not be present at the May term of the court they might have asked the special judge to adjourn over to the end that they might get Judge Priddy to sign the bill of exceptions upon his return to the State, or failing to do this, they might have asked the attorneys for the plaintiff to sign an agreed bill of exceptions under the statute above referred to. The testimony had been taken at the trial and transcribed by the regular court stenographer and there is nothing in the record to indicate that attorneys for the plaintiff would not have signed the bill of exceptions if asked to do so. Nothing was done to mislead the defendants in the law case, and when all the allegations of the complaint are read and considered in the light of each other we are of the opinion that it can not be said that the defendants in the law case were prevented from obtaining the presiding judge's signature to their bill of exceptions by unavoidable casualty or misfortune within the legal definition of those terms.

It follows that the decree must be affirmed.